**[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 517.]**

KEMPF SURGICAL APPLIANCES, INC., APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

**[Cite as *Kempf Surgical Appliances, Inc. v. Tracy*, 1996-Ohio-289.]**

*Taxation—Sales tax—Orthotics—Transcutaneous electrical nerve stimulators and neuromuscular electrical stimulators—Board of Tax Appeals' decision denying exemption under R.C. 5739.02(B)(19) reversed and cause remanded for determination whether the devices are exempt as aiding in human perambutation.*

(No. 95-460—Submitted November 9, 1995—Decided February 14, 1996.)

APPEAL from the Board of Tax Appeals, No. 93-D-486.

————————————

{¶ 1} Kempf Surgical Appliances, Inc. ("Kempf"), appellant, sells or rents transcutaneous electrical nerve stimulators ("TENS") and neuromuscular electrical stimulators ("NMES") in its orthotics and orthoses business. Both types of devices are small boxes with wires leading from them that attach to the human skin surface. At preset intervals, the devices, powered by batteries, deliver an electrical impulse through the wires to the skin.

{¶ 2} According to the evidence, the electrical charges alleviate pain and cause muscle contractions. When contracted, the muscles hold joints in place, much as a brace might, and assist the user in moving his limbs. Among the conditions these devices alleviate is "foot drop." The devices stabilize the foot in this condition so that the individual may walk almost normally. Customers also use these devices to rehabilitate their knees, and to walk after knee ligament surgery.

{¶ 3} Kempf's customers also use the devices to cure scoliosis. In this procedure, users attach the wires at designated points on their backs before going to bed at night. While the user sleeps, the electrical charges cause back muscles to

contract, which pulls the spine into correct alignment. The user typically wears this device only in bed.

{¶ 4} The Tax Commissioner, appellee, assessed sales tax on Kempf's sales of these devices in 1988 through 1990. He found that these devices "serve as temporary therapeutic devices and assist patients in curing his or her medical problems." Kempf appealed this order to the Board of Tax Appeals ("BTA").

{¶ 5} The BTA affirmed the commissioner's order. It found that TENS devices delivered electrical stimulation "[to] nerves to relieve chronic or post-traumatic pain, but do not actually physically support a part of the body in any direct fashion." As to the NMES devices, the BTA held that they delivered electrical stimulation "to muscles to cause their contraction, but do not actually physically support a part of the body in any direct fashion." The BTA ruled that the devices do not function the same as braces.

{¶ 6} This cause is now before this court upon Kempf's appeal as of right.

_____

*Lutz, Boster & Cornetet* and *John B. Cornetet*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Steven L. Zisser*, Assistant Attorney General, for appellee.

_____

***Per Curiam.***

{¶ 7} Kempf applies for exemption from the sales tax under R.C. 5739.02(B)(19), which provides:

"The tax does not apply to the following:

"***

"(19) Sales of *** braces or other devices for supporting weakened or non-functioning parts of the human body *** [and] crutches or other devices to aid human perambulation ***."

{¶ 8} Kempf argues that these devices technologically replace braces and are exempt under R.C. 5739.02(B)(19), or that they aid human perambulation and are exempt also under R.C. 5739.02(B)(19). We agree with the BTA that these devices are not braces under this exemption, but find that the BTA neglected to decide whether these devices aid human perambulation. Consequently, we reverse the BTA and remand this matter to it for such determination.

{¶ 9} In *Akron Home Med. Serv., Inc. v. Lindley* (1986), 25 Ohio St.3d 107, 25 OBR 155, 495 N.E.2d 417, we addressed the predecessor statute (R.C. 5739.02[B][18]) to this exemption. This statute exempted "braces and other similar medical or surgical devices for supporting weakened or useless parts of the human body ***." We ruled that "braces are of that group which *physically* supports parts of the body, as opposed to a broader type of 'support' which could include chemically induced support of particular organs." (Emphasis sic.) *Id*. at 109, 25 OBR at 157, 495 N.E.2d at 420. We ruled that oxygen and oxygen equipment, then under review, were not similar to braces. We judged the oxygen equipment to be delivery systems that do not actually support a part of the body in any direct fashion.

{¶ 10} We find the same here. The instant devices provide electrical charges to contract muscles that stabilize or support a part of the body. However, the muscles provide the support, not the electrical devices. Thus, these devices are not braces or other devices that support weakened or non-functioning parts of the human body under R.C. 5739.02(B)(19).

{¶ 11} Furthermore, the General Assembly amended the statute after the audit period (1977-1979) involved in our decision in *Akron Home Medical Services* to enact R.C. 5739.02(B)(19) and to exempt "crutches or other devices to aid human perambulation." (138 Ohio Laws, Part II, 3384.) We note that the General Assembly did not, in amending this exemption, include the term "similar" to modify the clause "other devices to aid human perambulation" as it had for "braces

and other *similar* medical or surgical devices" for our review in *Akron Home Medical Services*.

{¶ 12} On reviewing the testimony, there appears to be a question as to whether these devices can be used "to aid human perambulation." But, the BTA did not review these devices in light of this latter clause of R.C. 5739.02(B)(19). Accordingly, we reverse the BTA's decision and remand this matter to it for it to rule on whether these devices are exempt as aiding in human perambulation.

*Decision affirmed in*
*part, reversed in part*
*and cause remanded.*

MOYER, C.J., WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., dissents.

_____

**DOUGLAS, J., dissenting.**

{¶ 13} I respectfully dissent. I would affirm the BTA in all respects.

_____